**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| M.N., | : | Civil Action No. 24-7902 (SRC) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff M.N. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability starting on July 6, 2021. A hearing was held before ALJ Karen Shelton (the "ALJ") on June 20, 2023, and the ALJ issued an unfavorable decision on September 22, 2023. Plaintiff sought review of the unfavorable decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of September 22, 2023, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work, with certain exertional limitations. At step four, the ALJ also found that Plaintiff did not retain the residual functional capacity to perform his past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

Plaintiff makes four arguments on appeal: 1) the ALJ's decision at step four is not supported by substantial evidence; 2) the ALJ failed to develop the record as to Plaintiff's mental health; 3) the ALJ "inappropriately cherry-picked evidence" (Pl.'s Br. at 8); and 4) at step five, the vocational expert erred.

Plaintiff's case on appeal suffers from two principal defects: 1) its failure to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is

2

harmful normally falls upon the party attacking the agency's determination." Id. In such a case, "the claimant has the 'burden' of showing that an error was harmful." Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

Plaintiff first argues the ALJ erred at step four because "[t]he record contains no support for the finding of the ALJ that claimant could stand/walk up to two hours per day given his impairments." (Pl.'s Br. at 7.) The Commissioner responds by pointing out that the ALJ's step four decision contains more than two single-spaced pages of discussion of the medical evidence relating to Plaintiff's feet, legs, walking, and related issues. (See Tr. 23-26.) Moreover, the Commissioner points out that, in arriving at the RFC conclusion, the ALJ relied on the opinion of the state agency physician, Dr. Khayyal, who opined that Plaintiff retains the residual functional capacity to stand/walk for six hours in an eight-hour workday. (Tr. 75.) The step four RFC determination is supported by substantial evidence.

Plaintiff next argues that the ALJ erred by failing to develop the record as to Plaintiff's mental health. In opposition, the Commissioner responds that, given that the record contained four years of psychiatric treatment notes, opinions from Plaintiff's two mental health providers, and a report from a consultative evaluation, no further development of the record was warranted. Plaintiff did not submit any brief in reply and this Court infers that Plaintiff has conceded that the Commissioner is correct. Furthermore, Plaintiff has made no demonstration that he was

3

prejudiced, or that there were unsought mental health records that might have changed the outcome of the disability determination.

Plaintiff next argues that the ALJ "inappropriately cherry-picked evidence." (Pl.'s Br. at 8). Plaintiff alleges that the ALJ ignored an assessment from his treating psychiatrist that stated key functional limitations, pointing to page 1199 in the record, which is a checklist within a multi-page form signed by Dr. Temprosa-Lanez on June 15, 2023. (Tr. 1195-1202.) The checklist includes seven ratings of certain mental abilities at the level of "unable to meet competitive standards." (Tr. 1199.) There are many ways the Court could address this, but the most important point is that Plaintiff is wrong on the facts. In the discussion at step four, the ALJ wrote:

> The claimant had some limitations in making simple work-related decisions, but he was unable to meet competitive standards in his ability to remember work-like procedure; understand, remember instructions; maintain attention for two-hours segment [*sic*]; deal with normal stress; maintain regular attendance, sustain ordinary routine and complete a normal workday and workweek.

(Tr. 26.) These are the assessments that Plaintiff says the ALJ ignored, but there they are in the decision. The only error, perhaps, is that the ALJ did not include a citation to the record. The ratings made by Dr. Temprosa-Lanez on page 1199 are specifically discussed by the ALJ on page 26.

Last, Plaintiff contends that, at step five, the vocational expert erred, making certain errors in conducting the vocational analysis. Plaintiff cites no law to support the idea that this Court is authorized to review the substance of a vocational expert's testimony, nor any law to support the idea that § 405(g) authorizes this Court to reverse the Commissioner's decision based on reweighing the evidence. This Court is authorized only to review the decision under the

substantial evidence standard. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") The Third Circuit has held:

> A federal court's substantial-evidence review is "quite limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). A court may not weigh the evidence or substitute its own findings for the Commissioner's. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). [Plaintiff's] arguments amount to a request to reweigh the evidence and review the Commissioner's findings and decision de novo.

Davern v. Comm'r of Soc. Sec., 660 Fed. Appx. 169, 173-74 (3d Cir. 2016). See also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.") This Court cannot reweigh the evidence offered by the vocational expert at step five.

Moreover, Plaintiff was represented at the hearing before the ALJ by counsel. The record contains a transcript from the hearing which shows that, after the ALJ questioned the vocational expert, the ALJ said:

> ALJ : All right. Counsel, I tried to cover all the possibilities of my hypotheticals. Are there other questions you have for the vocational expert?
>
> ATTY : No, judge. I think you got it all.

(Tr. 58.) Plaintiff's counsel was provided the opportunity to cross-examine the expert at the hearing and chose not to do so. Having decided to forgo any challenges to the expert's testimony at the hearing, Plaintiff may not get a second chance on appeal. The ALJ's determination at step five is supported by substantial evidence.

Plaintiff has failed to persuade this Court that the ALJ erred in the decision, or that he was harmed by any errors. Plaintiff has not shown that the ALJ erred, has not shown that the

5

evidence supported a decision in his favor, and has made no demonstration of prejudice as required by <u>Shinseki</u>.  This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                                s/ Stanley R. Chesler
                                             STANLEY R. CHESLER, U.S.D.J.

Dated: May 2, 2025